**HAMMOND SCREW MACHINERY COMPANY LIMITED (in receivership), Plaintiff,**

v.

**D. Ray SULLIVAN, d/b/a Cinco Industries, Defendant.**

No. 83 C 1250.

United States District Court, N.D. Illinois, E.D.

Jan. 30, 1984.

Barbara J. Leff, John R. Doyle, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Alan B. Castator, William L. Smith, Jr., Hollobow & Taslitz, Chicago, Ill., for defendant.

MEMORANDUM

LEIGHTON, District Judge.

This cause is before the court on plaintiff's motion to strike and dismiss defendant's counterclaim and its fourth affirmative defense. For the following reasons, the motion is granted.

I

The suit is an action to collect an indebtedness, brought in the name of Hammond Screw Machinery Limited by its receiver, duly appointed pursuant to English law. Hammond is an English corporation with its principal place of business in Birmingham, England. On or about September 13, 1971, it entered into a debenture agreement with Barclays Bank Limited, an English financial institution. In addition to granting Barclays a legal mortgage against virtually all of Hammond's property, the agreement granted the bank a "fixed charge" against "all [of Hammond's] book debts ... now and from time to time due or owing." When Barclays demanded but failed to receive from Hammond payments secured by the debenture, the bank, pursuant to paragraph 7(a) of the agreement, appointed a receiver who is authorized by English law to collect in Hammond's name those debts owed to Hammond against which the bank has a fixed charge. Accordingly, on February 23, 1983, the receiver brought this suit against Cinco Industries, Inc., an Illinois corporation, seeking to collect, as authorized by the debenture, over $56,000 that Cinco allegedly owes Hammond.

On June 17, 1983, Cinco filed its fourth affirmative defense and a counterclaim, alleging it purchased from Talleres Saspi, S.A., a Spanish corporation, on May 3, 1983, an assignment of receivables, totaling nearly $228,000, which were due and owing from Hammond. Cinco maintains that it now has a claim against Hammond by virtue of the assignment, which may be raised in this action both as a set off and as a separate counterclaim against the receiver. In response, the receiver has filed the present motion to strike and dismiss, arguing that defendant cannot raise the affirmative defense, nor bring the counterclaim in this action.

The submissions of the parties fail to address the issue whether the agreement between Cinco and Hammond, out of which the claim asserted by the receiver arises, is subject to English or Illinois law. This oversight, however, does not prevent the court from ruling on the present motion since it has determined that the controlling legal principles are the same no matter which body of law is applied.

## II

In *N.W. Robbie & Co., Ltd. v. Whitney Warehouse Co., Ltd.*, [1963] 1 W.L.R. 1324, an English court confronted and resolved the basic issue that is before this court. The company in whose name the *Robbie* suit was brought entered into a debenture agreement in January 1960 which secured its indebtedness to a bank with a floating charge on the company's book debts. Between November 1960 and January 1961, Robbie & Co. ordered goods from a corporation that had the same corporate parent as the defendant, Whitney Warehouse Co., which owed Robbie certain debts subject to the charge in favor of the bank. In July 1961, pursuant to English law, the bank appointed a receiver who was authorized to collect in Robbie's name debts against which there was a charge. Nearly four months after appointment of the receiver,

defendant by assignment acquired debts owed to its sister subsidiary by Robbie & Co. for goods that had been delivered but not paid for. In an action brought by the receiver, the defendant, as in this case, sought to set off against the receiver's claim the debts owing from the company in receivership that had been assigned to the defendant after the receiver's appointment. The *Robbie* court held that these debts could not be set off under the facts presented because there was lacking a "mutuality in beneficial interest" between the claim asserted by the receiver and the claim which the defendant wished to assert against the receiver. *Id.* at 1339. Accordingly, in light of the *Robbie* decision, it appears that if English law is applied to the present case, Cinco's affirmative defense and counterclaim must be stricken on the ground that there is no mutuality in beneficial interest between the claim asserted by Hammond's receiver and Hammond's debts, originally owed to Talleres Saspi, S.A., which, as the pleadings establish, Cinco acquired by assignment only after the receiver was appointed and this suit was filed.

Cinco argues, however, that the precedential authority of the *Robbie* decision was seriously limited by the subsequent opinion of another English court in *Rother Iron Works, Ltd. v. Canterbury Precision Engineers, Ltd.*, [1973] 1 All E.R. 394. But a review of the opinion shows that defendant's reading of *Rother* is misguided; in fact, the case is fully consistent with *Robbie*. In *Rother*, the court ruled merely that a defendant may assert against a receiver a debt which was owed to the defendant by the company in receivership prior to the appointment of the receiver. The court reasoned that a "crystallisation" of a floating charge occurs when a receiver is appointed, thereby effecting an equitable assignment to the debenture holder of the rights of the company placed into receivership.[1] 1 All E.R. at 396. Accordingly, a

---

1. Plaintiff argues that since this case involves a "fixed" rather than a "floating" charge the equitable assignments in Barclays' favor should be

recognized as having occurred as soon as Cinco's obligations to Hammond arose. As far as this court can determine, all of the English

debenture holder as an equitable assignee cannot be in a better or different position than the assignor company at the time of the assignment. *Id.*

In the present case, however, Hammond, the company in receivership, was not indebted to Cinco when the receiver was appointed. As in *Robbie,* Cinco acquired the indebtedness which is the basis of its set off claim afterwards. Indeed, the court in *Rother* emphasized that its ruling did not extend to *Robbie* type circumstances: it was not addressing "a situation in which the cross-claim sought to be set off either arose or first came to the hands of the defendants after the crystallisation of the charge." *Id.* Accordingly, this court concludes that English law would prevent Cinco from asserting in this action its counterclaim and fourth affirmative defense since it acquired the receivables from Talleres Saspi, S.A., after the appointment of Hammond's receiver.

There is sound, common sense justification for the rule recognized in the English cases. If a debtor were allowed to set off against the claim of a receiver debts of the company in receivership that the debtor acquired by assignment after the appointment of the receiver, the priority supposedly conferred upon the debenture holder could easily be circumvented. Since a company is usually placed into receivership because of an inability to meet its indebtedness to a debenture holder, it stands to reason that normally there will be unsecured creditors of the company who also have not been paid. Since the unsecured creditors would have no basis for the assertion of priority, there would be very little chance that more than a small fraction of the debt obligations they held could ever be satisfied by the faltering company. Accordingly, these unsecured creditors would be willing to sell debts of a company in receivership at a discounted price which nevertheless would be more than could be obtained from the company. If debtors of the company in receivership were allowed to set off against a receiver subsequently acquired claims against the company, they would be willing to purchase debt obligations of the company from its unsecured creditors at a mutually advantageous discount; they then could assert the face amount of these debt instruments as a set off to the receiver's claim. As a result, the priority of the debenture holder would be undermined.

Consequently, it would be anomalous if American courts, applying the laws of their respective jurisdictions, allowed the maintenance of a counterclaim against a receiver in a case such as this. Although there is no exact American equivalent of the English debenture arrangement, in substance it is analogous to an assignment for the benefit of creditors—a transaction well recognized throughout this country. Illinois courts have embraced the long-standing American majority rule which limits the circumstances in which a debtor may assert a set off claim against an assignee for the benefit of creditors.

> The courts of most jurisdictions recognize and allow a debtor of an insolvent to set off a claim against the insolvent *acquired prior to* the insolvency proceeding upon the theory that where the right to setoff exists at such time, the insolvent's debtor equitably owes only the balance, if any, over and above the amount which the insolvent owes him, and that such balance is the only debt that passes to the receiver on his appointment.

*Chaitman v. ENM Company, Inc.,* 14 Ill. App.3d 990, 304 N.E.2d 107, 109 (1973),

---

cases addressing the right of a debtor to assert counterclaims against a receiver have involved "floating" charges; apparently, there is no case law directly addressing whether the debenture holder of a fixed charge against book debts arising in the future is immunized from counterclaim with respect to those debts even before a receiver is appointed. In any event, the court need not resolve this uncertainty in English law in this suit since it is apparent from Cinco's pleadings that it acquired Hammond's receivables after the appointment of the receiver. Suffice it to say that, by that time, Barclays' charge against Cinco's debts to Hammond most certainly had "crystallised".

*quoting Willis v. Fidelity & Deposit Co.*, 345 Ill.App. 373, 103 N.E.2d 513, 517 (1952) (emphasis supplied). Conversely, it is well settled that after an assignment for the benefit of creditors has taken place, and a receiver properly appointed, a debtor of the insolvent cannot take an assignment of a claim against the insolvent and set it off against his indebtedness to the assignee for the benefit of creditors. *See* 6A C.J.S. *Assignments For Benefit Of Creditors* § 73, p. 907 (1975). This rule is identical to that applied by English courts when the assignment and the appointment of a receiver are governed by a debenture. Therefore, this court concludes that an Illinois court also would disallow Cinco's set off and counterclaim in this action instituted by Hammond's receiver, since the claim was acquired after the equitable assignment to Barclays and the appointment of a receiver pursuant to the debenture. For these reasons, the court grants plaintiff's motion to strike and dismiss defendant's counterclaim and its fourth affirmative defense.

So ordered.